# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DEMETTRESS ARLENE BURNETT,　　　　　　　　Case No. 1:11-cv-324

　　　　Plaintiff,　　　　　　　　　　　　　　　Spiegel, J.
　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.

　　v.

CARINGTON HEALTH SYSTEMS,

　　　　Defendant.


## REPORT AND RECOMMENDATION

Plaintiff Demettress Burnett, proceeding *pro se* and *in forma pauperis,* brings this action against a former employer, Defendant CHS-Colerain, Inc., d/b/a Veranda Gardens,[1] alleging that Defendant discriminated against her on the basis of her race.[2] (*See* Doc. 3). Pursuant to local practice, this matter has been referred to the undersigned magistrate judge for a report and recommendation on the Defendant's motion for summary judgment. (Doc. 24). For the reasons set forth herein, Defendant's motion should be **GRANTED** and this case should be dismissed.

---

[1]Plaintiff incorrectly names Carington Health Systems as the Defendant, but the correct Defendant employer nevertheless responded. (Doc. 7 at 1).

[2]Plaintiff previously filed suit in this Court against a different former employer, Select Specialty Hospital, also alleging race-based discrimination, harassment, and/or retaliation. *See* Case No. 10-cv-505. The undersigned recommended that summary judgment be granted to the defendant-employer in that case on August 24, 2012. That Report and Recommendation was adopted by the presiding district judge, and the lawsuit was dismissed with prejudice on September 27, 2012. (Docs. 38, 39).

## I. Background

Approximately six weeks prior to hiring Plaintiff, on December 23, 2009, Defendant's administrator, Brian Coffey, received notification from the Ohio Department of Health (ODH) concerning a survey, or audit, of Veranda Gardens ("Veranda"), a skilled nursing facility in Cincinnati, Ohio. As a result of that survey, ODH imposed penalties upon Veranda for its past non-compliance with regulations, including prospective penalties that threatened the ability of Defendant to continue operations if it failed to reach compliance by stated deadlines. During the weeks that followed, Veranda worked with consultants and others to correct the problems identified by ODH. The same day it received notification of the penalties from ODH, Defendant removed the existing Director of Nursing ("DON"), a Caucasian employee. Tom Schindler, the Director of Clinical Operations for non-party CHSHO, Inc., an affiliated entity that provided consulting to Defendant, began serving as an interim DON while Defendant searched for a replacement. Debbie Fiehrer, a Clinical Staff Technician also employed by CHSHO, assisted Schindler and functioned as an interim Assistant DON.

Plaintiff, who is black, was subsequently hired as the new DON at Veranda, beginning on February 1, 2010.[3] In an affidavit, Brian Coffey avers that Defendant decided to hire Plaintiff based upon several considerations, including: (1) a small candidate pool; (2) Plaintiff's familiarity with Veranda as a contracted nurse with a staffing agency used by Veranda; (3) Plaintiff's qualifications, including her placement as an RN Supervisor at Veranda in the past; and (4) Plaintiff's favorable interviews with

---
[3]Plaintiff alleges that she began her employment with Defendant two weeks earlier, but admits that she was not officially employed by Defendant as DON until February 1, 2010.

several managers and consultants. (Doc. 24-1). When hired as the DON, Plaintiff was the fourth African-American female, out of a total administrative staff of 17.

Plaintiff was terminated from her position just three weeks later, on February 22, 2010. The same person who hired her, Brian Coffey, met with Plaintiff and reviewed a written list of five violations that provided the grounds for her termination. Plaintiff disputed the violations and wrote down her own version of events on the back of the termination paperwork. Plaintiff did not notify Mr. Coffey or anyone else at the time of her termination meeting that she believed that discrimination played any role in her termination. However, in a single-spaced typed, six-page letter dated two days later, on February 24, 2010, Plaintiff notified Defendant that she believed that her termination was racially motivated. Mr. Coffey responded by gathering written statements from the witnesses who previously had made verbal complaints concerning the violations that led to Plaintiff's termination.

Prior to initiating suit in this Court, Plaintiff exhausted her administrative remedies by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was terminated based on her race, that Caucasian employees were insubordinate to her, and that defendant did not provide her with sufficient training to perform her position "as promised." (Doc. 3 at 8). Declining to make any specific findings concerning Plaintiff's charges, the EEOC issued Plaintiff a Notice of her right to file the instant lawsuit. (*Id.* at 9).

In her federal complaint, Plaintiff generally alleges that she was "harassed by staff who constantly made refusals to perform duties, were beligerent [sic] to me, + made racial comments" (Doc. 3 at 2). She alleges that she was not issued warnings

prior to her termination, or afforded the same leeway to "grow" into her position that was afforded to white employees who were new to their positions. (*Id.* at 2-3). She alleges that her concerns about staff "behavoir [sic] + disrespect went unaddressed when it involved the Caucasian employees even though policies were violated…." (*Id.*). Construing Plaintiff's *pro se* allegations liberally, Plaintiff claims that disparate treatment and/or discriminatory animus led Defendant to terminate her. Defendant's motion for summary judgment argues that Plaintiff cannot establish the essential elements of her claims.

## II. Analysis

### A. Summary Judgment Standard

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c))(internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

### B. Defendant's Motion

The precise nature of the discrimination alleged by Plaintiff is ambiguous, to the extent that her complaint could support two possible theories under Title VII: (1) that

Plaintiff was terminated because of her race (Doc. 3 at ¶III); and/or (2) that she was subjected to race-based harassment (*id.* at ¶IV), or disparate racial treatment. Regardless of the legal theory on which a plaintiff relies, summary judgment will be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On the record presented, Defendant is entitled to summary judgment based upon its showing that Plaintiff cannot establish any claim under Title VII.

### 1. Discriminatory Termination Claim

Defendant is entitled to summary judgment because it has come forward with legitimate, nondiscriminatory reasons for Plaintiff's termination, and Plaintiff has not carried her burden to show that those stated reasons were pretextual.

#### a. Plaintiff's Prima Facie Case

Plaintiff has offered no direct evidence that race played any role in her termination, and instead relies on indirect or circumstantial evidence that she alleges supports her claim of discrimination. The familiar *McDonnell Douglas* burden-shirting framework applies to cases involving indirect evidence of racial discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, a plaintiff may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and 4) she was replaced by an individual outside the protected class, or alternatively, was treated less

5

favorably than a similarly-situated individual outside the protected class. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2004).

To some degree, Defendant disputes the third element of Plaintiff's prima facie case, insofar as one of the "violations" for which Plaintiff was terminated was her failure to demonstrate "the qualities and management skills necessary" to perform as DON. However, Defendant does not dispute that it believed Plaintiff to be qualified when it hired her into the position just three weeks prior to firing her. Therefore, for purposes of the pending motion, the Court will assume that Plaintiff can establish a prima facie case of race discrimination. Plaintiff is African-American, was terminated, and presumably (absent contrary evidence) was replaced by a Caucasian employee.

Once a plaintiff has established a prima facie case, the burden of production shifts to the employer to put forth a "legitimate, nondiscriminatory reason" for the adverse action taken. *Id.* (citing *Burdine v. Texas Dept. of Community Affairs*, 450 U.S. 248, 253 (1981)). If the employer meets that burden, then "the presumption of discrimination created by the prima facie case falls away…and the plaintiff then needs to show that the defendant's 'legitimate nondiscriminatory reason' was a 'pretext for discrimination.'" *Id.*, at 706-707 (citing *DiCarlo v. Potter*, 358 F.3d 408, 414-15 (6th Cir. 2004)(additional citation omitted)).

### b. Defendant's Nondiscriminatory Reasons for Termination

At her termination meeting, the Defendant provided Plaintiff with the following written list of violations of policies and procedures as the basis for her termination:

1.  Employee canceled scheduled agency staff on the weekend of 2/20/2010 without notification of scheduler or administrator and failed to

ensure coverage of the nursing needs, or schedule replacement staff, leaving the facility with inadequate staffing;

2. It has been noted that Employee raises her voice at staff in an inappropriate manner, in violation of …customer service policies and practices;

3. Employee has made inappropriate comment regarding "LPNs being weak", thereby creating an atmosphere of disrespect and discontent between management staff and administration;

4. Employee made demands on the administrative staff/personnel to complete "floor tasks" during recent snow emergency, yet Employee did not assist with the work in any manner;

5. Employee has not exhibited the qualities and management skills necessary to direct the nursing department.

(*See* Doc. 24-11). The listed reasons are facially legitimate and nondiscriminatory. Therefore, Defendant has rebutted the presumption of discrimination created by Plaintiff's prima facie case. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

Several of the stated reasons for Plaintiff's termination relate to her frequent interpersonal conflicts with staff during her brief tenure as DON. Plaintiff does not deny the existence of those conflicts, but charges that they arose from impermissible racial bias. However, Defendant is entitled to summary judgment, because Plaintiff has failed to show that the reasons given for her termination were not the true reasons, but were instead were a pretext for discrimination. *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1395 (6th Cir. 1993). "The ultimate burden of proving the defendant's intent to discriminate remains with the plaintiff at all times." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006), (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

### c. Plaintiff's Failure to Show Pretext

"A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003)(additional citation omitted). Rather than providing evidence, Plaintiff attempts to overcome Defendant's stated reasons for the termination based on nothing more than her own subjective beliefs. Plaintiff's lack of any actual evidence of pretext is fatal to her claim. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992)(plaintiff's subjective belief insufficient to maintain claim of race discrimination); *see also In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)(holding that a nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which the nonmovant seeks to rely to create a genuine issue of material fact).

The record in this case strongly supports a finding that Plaintiff was terminated for the nondiscriminatory reasons stated in the termination notice. Plaintiff was hired and fired by the same person, within a span of just three weeks. Three of the people with whom Plaintiff interviewed for the DON position participated in her termination meeting. The "same actor" presumption of nondiscrimination applies in this case and adds further support for Defendant's argument. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461 (6th Cir. 1995)("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class.").

Plaintiff asserts that Defendant hired her only temporarily to somehow "fool" regulatory authorities into believing that Defendant had a qualified DON, and that Defendant quickly fired her, based upon her race, as soon as it had accomplished that initial objective. But Plaintiff's theory rests on nothing more than speculation and conjecture, and defies common sense, as well as multiple documents in the record. As Defendant points out, the record reflects that Veranda had an acting DON both prior to and after Plaintiff's termination, offering no reason to seek to "fool" state authorities. Aside from Plaintiff's lack of evidence that hiring a DON for three weeks in February 2010 had any regulatory impact, regulatory records submitted by Defendant undermine any significance of the February dates because they reflect compliance deadlines of March and June of 2010.

More importantly, evidence of Plaintiff's violations was relatively strong, notwithstanding the fact that Plaintiff disputes those violations. In its motion for summary judgment, Defendant specifically focuses on three of the five violations: (1) Plaintiff's cancellation of agency staff on the weekend of February 20, 2010 without notice, and failure to schedule replacement staff; (2) Plaintiff's unprofessional demeanor/tone used with staff; and (3) Plaintiff's lack of qualities and management skills necessary to serve as DON. (Doc. 24-11). Once alerted to Plaintiff's post-termination charge of discrimination, Defendant investigated and obtained written statements corroborating all five violations. The written statements were consistent with earlier pre-termination verbal accounts related to management, and confirmed that grounds existed for termination. In addition to Coffey's affidavit, Defendant attaches various witness statements as exhibits to its motion for summary judgment, as well as

9

contemporaneous emails discussing the decision to terminate Plaintiff, and other evidentiary documents such as Personnel Policies and ODH documents.

The first violation, concerning the cancellation of staff previously scheduled by Assistant DON Stacey Sievering, was reported by several employees. (*See, e.g.*, Doc. 24-1, 24-5. 24-7). The issue of adequate staffing was paramount, in part, because it was a critical area identified by ODH that Veranda was required to improve. Plaintiff's handwritten response to the termination notice reflects her belief that certain staff were not supposed to be scheduled at Veranda because they had not attended a mandatory meeting. (Doc. 31-1 at 7). Plaintiff complains in her response to Defendant's motion that she removed only one staff member, and did so for a valid reason. In her six-page post-termination letter to Defendants, Plaintiff described her role in the staffing issue as an "honest mistake." (Doc. 32-1 at 40). However, Plaintiff has failed to support her claim with any admissible evidence.[4]

As noted by Defendant, most of Plaintiff's exhibits are unauthenticated, unsigned, unsworn, and contain hearsay. Even if considered, the exhibits offer no more than minimal evidence to dispute Defendant's finding that the staffing violation occurred. In other words, Plaintiff's largely inadmissible "evidence" at most suggests a minor factual dispute between Plaintiff's account and the accounts of other witnesses. The Defendant's reasonable resolution of that dispute, based on the weight of the evidence it reviewed and submitted to this Court, does not demonstrate racial bias.

---

[4]Plaintiff's deposition is filed in this case, and although a trial court has no duty "to search the entire record to establish that it is bereft of a genuine issue of material fact," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-1480 (6th Cir. 1989), the Court has done so here.

In fact, the Defendant would be entitled to summary judgment even if the Court believed Plaintiff's explanations for her alleged violations of company policies and procedures, and even if this Court believed that the termination was too harsh a penalty, or that Defendant should have given Plaintiff additional time to adjust to her new role. The Sixth Circuit uses a modified "business judgment" or "honest belief" rule, whereby a court will permit an employer to "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard v. Marion Technical College*, 698 F.3d 275, 286 (6th Cir. 2012)(quoting *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)(additional internal quotation marks and citation omitted).

Once the employer comes forward with an explanation of its reasonable reliance upon particularized facts that were before it at the time, the employee must "produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Id.*, quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012)(additional citation omitted). "To overcome the honest belief rule, the employee 'must allege more than a dispute over the facts upon which [the] discharge was based." *Id.* Instead, she must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.'" *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Here, Plaintiff has failed to produce evidence demonstrating that Defendant's reliance on the facts before it at the time of her termination was unreasonable. Plaintiff's disagreement with Defendant's business judgment "does not create sufficient evidence of pretext in the face of the substantial evidence that [the

employer] had a reasonable basis to be dissatisfied." *Id.*, quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001).

The second and third violations relied upon by Defendant similarly are well-supported by record evidence attached to Defendant's motion. On the first day of assuming her position as DON, Plaintiff called a nurse (Greg Abrams) into her office and berated him in front of Stacey Sievering (Assistant DON). (Doc. 24-4). Ms. Sievering was so concerned that she immediately reported the incident to Mr. Coffey. (Doc. 24-1 at 8). Subsequently, Mr. Coffey received multiple similar complaints about Plaintiff's caustic, demanding, and overbearing demeanor with other staff members, whom Plaintiff accused of insubordination and of failing to respect her position as DON. (*Id.* at 9-12). Lisa Cowden called a meeting with Plaintiff on February 8, 2010 to address communication problems that had arisen between Plaintiff and staff in Plaintiff's first week, but to no beneficial effect. (Doc. 23, Deposition at 110-111). Plaintiff called one nurse at home during a major snowstorm, speaking to her so loudly and sharply that the nurse's husband, overhearing the tone, urged her to quit. (Doc. 24-6, 24-1 at 9, 24-8 at 2). Plaintiff demanded another nurse (Shannon Dailey) work additional overtime for short-staffed shifts, resulting in another significant incident in which Plaintiff's management style and demeanor were strongly criticized. (Doc. 24-1, 24-7, 24-8). Debbie Fiehrer, who helped hire Plaintiff and served Assistant DON at times, also complained about Plaintiff's unprofessional demeanor. (Doc. 24-7, 24-8). Last, Ms. Cowden reported Plaintiff's inappropriate demeanor. (Doc. 24-9).[5]

---

[5]Although not in the form of affidavits, these statements are attached to Coffey's affidavit as statements that he considered in his decision to terminate the Plaintiff. Thus, while are not considered for the truth of

12

Plaintiff argues that multiple Caucasian staff members were in fact insubordinate, and were not disciplined by Defendant for their insubordination and lack of respect for her. She suggests that because the staff members who registered complaints about her demeanor were all Caucasian, they should not have been believed. However, Plaintiff's subjective perception that she was blameless in the many conflicts that arose does not overcome the Defendant's evidence that it reasonably believed that Plaintiff lacked the qualities and abilities to be an effective manager, given both the frequency and severity of conflicts within the span of a few short weeks. An employer's nondiscriminatory reasons for termination will be upheld so long as the employer believed that the employee committed one or more terminable offenses, regardless of whether the employer's belief was mistaken. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). Here, the evidence is irrefutable that Defendant reasonably believed that it had legitimate grounds to terminate Plaintiff.

Plaintiff offers no admissible evidence that the proffered reasons for her termination were factually false. At her deposition, she offered hearsay testimony that "a lot of people" told her that she was fired because she was black, but when questioned further, she stated that only two non-supervisory employees (Lisa Fisher, a Commonwealth employee, and Eulanda Gunn[6]) expressed their opinions that Plaintiff was only hired to get Defendant through state review. Ms. Fisher further speculated (prior to Plaintiff's termination) that the Defendant would not retain her because she is

---

the matter asserted, the statements are properly considered as evidence that Coffey had before him prior to and at the time of the termination.

[6]Eulanda Gunn was fired prior to Plaintiff's termination. (Doc. 23 at 89, 94).

black, while Ms. Gunn later opined (after both Plaintiff's and Ms. Gunn's termination) that Plaintiff was terminated based upon her race. (Doc. 23 at 85-89).

Plaintiff also fails to provide evidence to support the second type of pretext - where a plaintiff asserts that discrimination is the most likely reason for the termination notwithstanding the existence of other grounds. A plaintiff attempting to prove this type of pretext "is required to produce additional evidence of discrimination beyond his prima facie evidence." *Burus v. Wellpoint Companies, Inc.*, 2010 WL 1253089 at *10 (E.D. Ky. March 25, 2010), *aff'd*, 2011 WL 3444311 (6th Cir., Aug. 8, 2011)(applauding district court's pretext analysis as "spot-on"). Plaintiff's subjective feeling of being disrespected by Caucasian nurses over whom she had authority is insufficient to overcome Defendant's overwhelming evidence that it believed that Plaintiff's "people skills" were woefully inadequate. *Accord Treadwell v. American Airlines, Inc.,* 716 F. Supp.2d 721, 728 (W.D. Tenn. 2010), *aff'd* 447 Fed. Appx. 676 (6th Cir., 2011)(granting summary judgment to employer on race discrimination claim where only evidence were affidavits reflecting plaintiff's and co-workers' subjective beliefs). Again, Plaintiff has failed to offer any evidence in this case to support her subjective beliefs.

Last, Plaintiff offers no evidence to prove the third type of pretext - that her overall course of conduct was insufficient to support termination. *See also Clark v. Walgreen Co.*, 424 Fed. Appx. 467, 474 (6th Cir. 2011)(plaintiff's evidence of pretext insufficient to overcome "great weight" of employer's evidence of legitimate basis for termination). Defendant has produced evidence, including contemporaneous emails and witness statements, as well as Coffey's affidavit, that support Defendant's reasonable belief that Plaintiff's actions were grounds for termination.

In short, Defendant has carried its burden of proving that it terminated Plaintiff for legitimate and non-discriminatory reasons. Defendant has provided extensive evidence supporting its concerns with Plaintiff's management style during her extremely short tenure. Interpersonal conflicts between Plaintiff and other staff members demanded near-constant intervention and attention from other administrative staff. (*See* Doc. 24-8). In fact, in her deposition, she admits to having a meeting with Lisa Cowden on February 8, 2010 to discuss complaints that Lisa had received from staff about Plaintiff's conduct. (Doc. 23 at 110-111). Defendant took prompt action to investigate Plaintiff's post-termination complaint of racial bias as soon as it was alerted to that concern. However, the Defendant's investigation only confirmed its reasonable belief that termination was warranted.

### 2. Harassment/ Hostile Work Environment

For similar reasons, Defendant is entitled to summary judgment if Plaintiff's claim is construed as one of disparate treatment or racial harassment/hostile work environment. To prove a racially hostile work environment, "a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009)(citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). Defendant is entitled to judgment as a matter of law for any such claim, based upon Plaintiff's inability to show all but one of the requisite elements.

Plaintiff has shown only that she is a member of a protected class. Her evidence falls short on every other element of her claim; she cannot show that she was subjected to racial "harassment" that was sufficiently severe and pervasive to interfere with her work environment, or that Defendant should be held liable. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011). Plaintiff alleges that she was "harassed" by insubordinate and belligerent staff, who allegedly "made racial comments." However, Plaintiff testified that she never heard a single racial epithet.

The lone "comment" that Plaintiff believes to have been racially motivated involved a story told by Lisa Cowden, the Customer Service Manager at consulting company CHSHO, Inc., to several employees including Plaintiff, on February 17 – just 5 days before Plaintiff's termination. Ms. Cowden shared a story about baseball legend Jackie Robinson in a meeting held during Black History month. Plaintiff testified that Cowden "looked at" Plaintiff while relating the story of how Jackie Robinson was instructed by his managers to not give in to the taunts of either the crowds in the stands or opposing players. Plaintiff testified that Ms. Cowden asked Plaintiff (the only black person present) if she "knew" the story. Plaintiff did not relate her alleged discomfort to anyone at the time. In fact, although she testified that she felt "uncomfortable" at the time, she only later interpreted Cowden's comments as an indirect warning that she, as a black person, "need[ed] to stay in my place." (Doc. 23, Deposition at 98, 107).

This single instance of a story being told about Jackie Robinson is insufficient to demonstrate severe or pervasive racially-motivated conduct. The story is racially neutral, and does not suggest any overt racially motivated animus, even when Cowden's alleged query to Plaintiff if she "knew" the story is taken into account. The

story was not told by one of Defendant's employees, and Plaintiff did not let any supervisory personnel know that she felt uncomfortable in any way. The Defendant cannot be held liable for a single incident that Plaintiff (after the fact) came to subjectively believe was intended as a form of racial intimidation, given that Plaintiff failed to promptly notify Defendant and the incident involved no obvious racial animus. *See, e.g., Williams v. CSX Transp. Co., Inc.,* 643 F.3d at 512 (holding that isolated incidents will not suffice to prove sufficiently severe or pervasive race-based harassment).

In addition, the Sixth Circuit has explained that "[t]he act of discrimination by the employer in [a hostile work environment case involving coworkers] is not the harassment, but rather the inappropriate response to the charges of harassment." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005)(internal quotation marks and citation omitted). Here, Defendant was never put on notice by Plaintiff of her concerns about the Jackie Robinson story or alleged race-based attitudes of nursing staff until after her termination. Once Brian Coffey received Plaintiff's complaint that race played a role in her termination, Defendant took reasonable steps to investigate by obtaining written statements that fully corroborated the previous verbal accounts of the violations that led to Plaintiff's termination. On the facts presented, Plaintiff has failed to show disparate treatment or racially motivated harassment, or that the Defendant's response to her post-termination complaints was either indifferent or unreasonable.

Plaintiff also points to her termination papers as evidence of "harassment" but the written violations stated therein suggest neither direct nor indirect racial animus.

17

Plaintiff's subjective belief that she was unfairly terminated does not constitute evidence of racial harassment.[7]

With respect to disparate treatment, Plaintiff complains generally that white employees new to their positions were permitted to "grow" into their supervisory positions, while she was not provided the same consideration. However, to prove disparate treatment, a plaintiff must at a minimum produce evidence that establishes: "(1) that [she] was a member of a protected class and (2) that for the same or similar conduct [she] was treated differently than similarly-situated non-minority employees." *Mitchell*, 964 F.2d at 582-83(citing *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir. 1988)(additional citation omitted). "In order to prove the second element…the plaintiff must produce evidence that the relevant other employees are 'similarly situated in all respects.'" *Hollins v. Atlantic Co.*, 188 F.3d 652, 659 (6th Cir.)(quoting *Mitchell*, 964 F.2d at 583). Here, Plaintiff offers no evidence of any similarly situated Caucasian supervisor, who was not disciplined for similar conduct. Even if Plaintiff believes that Defendant's decision to terminate her was unfair, or overly abrupt, that subjective belief does not translate to proof of an impermissible racial motive.

### III. Conclusion and Recommendation

For the stated reasons, the undersigned hereby **RECOMMENDS** that the Defendant's Motion for Summary Judgment (Doc. 24) be **GRANTED.** Plaintiff's complaint should be dismissed with prejudice, and this case be **CLOSED**.

---

[7]As Defendant notes, although Plaintiff also testified that she believed that the termination papers constitute "slander," no claim of slander is included in her complaint.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DEMETTRESS ARLENE BURNETT,   Case No. 1:11-cv-324

    Plaintiff,   Spiegel, J.
        Bowman, M.J.

v.

CARINGTON HEALTH SYSTEMS,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make

objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).